CASE NOT YET SCHEDULED FOR ORAL ARGUMENT

No. 26-1038 (consolidated with 26-1037)

# IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

ELENA VENNER, ET AL.,

*Petitioners,*

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

*Respondents.*

## INTERVENOR-RESPONDENT STATES' RESPONSE TO PETITIONERS' MOTION TO STAY THE RULE PENDING REVIEW

| | |
|---|---|
| RUSSELL COLEMAN | JOHN B. MCCUSKEY |
| ATTORNEY GENERAL | ATTORNEY GENERAL |
| | |
| Matthew F. Kuhn | Michael R. Williams |
| *Solicitor General* | *Solicitor General* |
| Office of the Kentucky | West Virginia Attorney |
| Attorney General | General's Office |
| 700 Capital Avenue | 1900 Kanawha Blvd. E |
| Suite 118 | Bldg. 1 Rm. 26E |
| Frankfort, KY 40601 | Charleston, WV 25305 |
| (502) 696-5300 | (304) 558-2021 |
| Matt.Kuhn@ky.gov | mwilliams@wvago.gov |
| | |
| *Counsel for Intervenor* | *Counsel for Intervenor* |
| *Commonwealth of Kentucky* | *State of West Virginia* |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................. ii

GLOSSARY .................................................................................. vii

INTRODUCTION ........................................................................... 1

BACKGROUND ............................................................................. 2

ARGUMENT .................................................................................. 3

I.   Petitioners Are Unlikely To Succeed On The Merits .......................... 4

   A.  The Rule Creates No Substantial Burden Under RFRA................ 4

   B.  The Rule Doesn't Implicate Due Process Concerns ....................... 6

      1.  Petitioners Lack A Relevant Substantive Due Process
          Right................................................................................ 7

      2.  EPA's Decision Was Rational .............................................. 9

   C.  EPA Wasn't Required to Respond to Petitioners' Comments ..... 11

II.  Petitioners Have Not Shown Concrete, Immediate, Irreparable
     Harm ............................................................................................ 16

III. The Balance of Equities and Public Interest Disfavor A Stay ......... 21

   A.  A Stay Immediately Harms Regulated Parties And Others......... 22

   B.  A Stay Would Not Serve The Public Interest................................ 24

CONCLUSION ............................................................................. 25

**Page(s)**

**Cases**

*Alpine Sec. Corp. v. Fin. Indus. Regul. Auth.*,
    121 F.4th 1314 (D.C. Cir. 2024) ...................................................................21

*Am. Elec. Power v. Connecticut*,
    564 U.S. 410 (2011) ....................................................................................15

*Apache Stronghold v. United States*,
    101 F.4th 1036 (9th Cir. 2024) ....................................................................5

*Bd. of Regents v. Roth*,
    408 U.S. 564 (1972).......................................................................................7

*Brown v. Bd. of Educ.*,
    347 U.S. 483 (1954).....................................................................................15

*C.L. for Urb. Believers v. City of Chicago*,
    342 F.3d 752 (7th Cir. 2003).........................................................................6

*Carlson v. Postal Regul. Comm'n*,
    938 F.3d 337 (D.C. Cir. 2019)......................................................................12

*Citizens for Resp. & Ethics in Wash. v. Dep't of Educ.*,
    538 F. Supp. 2d 24 (D.D.C. 2008) ...............................................................19

*Clean Air Council v. United States*,
    362 F. Supp. 3d 237 (E.D. Pa. 2019) .............................................................8

*Collins v. City of Harker Heights*,
    503 U.S. 115 (1992)........................................................................................3

*Cnty. of Sacramento v. Lewis*,
    523 U.S. 833 (1998).....................................................................................11

*CTS Corp. v. EPA*,
    759 F.3d 52 (D.C. Cir. 2014).......................................................................13

*Del. Riverkeeper Network v. FERC,*
243 F. Supp. 3d 141 (D.D.C. 2017) ...........................................................9

*Del. Riverkeeper Network v. FERC,*
895 F.3d 102 (D.C. Cir. 2018) ....................................................................7

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.,*
489 U.S. 189 (1989) ....................................................................................7

*Ely v. Velde,*
451 F.2d 1130 (4th Cir. 1971) ....................................................................8

*Encino Motorcars, LLC v. Navarro,*
579 U.S. 211 (2016) ..................................................................................23

*Free Speech Coal., Inc. v. Paxton,*
606 U.S. 461 (2025) ..................................................................................10

*Hurd v. District of Columbia,*
147 F.4th 1036 (D.C. Cir. 2025) ................................................................9

*Jones v. Air Line Pilots Ass'n,*
713 F. Supp. 2d 29 (D.D.C. 2010) ............................................................10

*Juliana v. United States,*
947 F.3d 1159 (9th Cir. 2020) ....................................................................8

*Kaemmerling v. Lappin,*
553 F.3d 669 (D.C. Cir. 2008) ....................................................................5

*KalshiEX LLC v. Commodity Futures Trading Comm'n,*
119 F.4th 58 (D.C. Cir. 2024) ..................................................................17

*LeMoyne-Owen College v. NLRB,*
357 F.3d 55 (D.C. Cir. 2004) ....................................................................15

*Littlejohn v. Sch. Bd. of Leon Cnty., Fla.,*
132 F.4th 1232 (11th Cir. 2025) ..............................................................10

*Lombardi v. Whitman,*
485 F.3d 73 (2d Cir. 2007) ........................................................................11

*Lyng v. Nw. Indian Cemetery Protective Ass'n,*
    485 U.S. 439 (1988)............................................................4, 5

*Mahmoud v. Taylor,*
    606 U.S. 522 (2025)...........................................................6, 14

*Marin Audubon Soc'y v. FAA,*
    121 F.4th 902 (D.C. Cir. 2024) ...............................................13

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Auto.*
    *Ins. Co.,*
    463 U.S. 29 (1983)..................................................................15

*Nat'l Ass'n of Farmworkers Orgs. v. Marshall,*
    628 F.2d 604 (D.C. Cir. 1980)..................................................20

*Nat'l Sea Clammers Ass'n v. City of New York,*
    616 F.2d 1222 (3d Cir. 1980) ....................................................7

*Nken v. Holder,*
    556 U.S. 418 (2009)...............................................3, 21, 24, 25

*Oakbrook Land Holdings, LLC v. Comm'r,*
    28 F.4th 700 (6th Cir. 2022) ....................................................12

*Portland Cement Ass'n v. Ruckelshaus,*
    486 F.2d 375 (D.C. Cir. 1973)..................................................12

*Reno v. Flores,*
    507 U.S. 292 (1993)...................................................................7

*Sanchez v. Off. of the State Superintendent of Educ.,*
    45 F.4th 388 (D.C. Cir. 2022) ..................................................10

*SF Chapter of A. Philip Randolph Inst. v. EPA,*
    No. C 07-04936 CRB, 2008 WL 859985
    (N.D. Cal. Mar. 28, 2008) ...........................................................8

*Sierra Club v. Atl. Reg'l Comm'n,*
    171 F. Supp. 2d 1349 (N.D. Ga. 2001).....................................17

*Util. Air Regul. Grp. v. EPA*,
　573 U.S. 302 (2014) ............................................................................2

*Va. Petrol. Jobbers Ass'n v. Fed. Power Comm'n*,
　259 F.2d 921 (D.C. Cir. 1958) ...........................................................24

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
　435 U.S. 519 (1978) .....................................................................13, 14

*Weber v. Aetna Cas. & Sur. Co.*,
　406 U.S. 164 (1972) ..........................................................................15

*Wis. Gas Co. v. FERC*,
　758 F.2d 669 (D.C. Cir. 1985) ...............................................16, 17, 18

## Statutes

42 U.S.C. § 2000bb-1 ..............................................................................4

42 U.S.C. § 7521 .....................................................................................2

42 U.S.C. § 7543 .....................................................................................9

42 U.S.C. § 7607 ............................................................................. 11, 12

## Regulations

74 Fed. Reg. 66,496 (Dec. 15, 2009) ......................................................2

75 Fed. Reg. 25,324 (May 7, 2010) .........................................................2

76 Fed. Reg. 57,106 (Sept. 15, 2011) ......................................................2

77 Fed. Reg. 62,624 (Oct. 15, 2012) ........................................................2

81 Fed. Reg. 73,478 (Oct. 25, 2016) ........................................................2

85 Fed. Reg. 24,174 (Apr. 30, 2020) ........................................................2

86 Fed. Reg. 74,434 (Dec. 30, 2021) ........................................................................2

89 Fed. Reg. 27,842 (Apr. 18, 2024) ....................................................................2, 23

89 Fed. Reg. 29,440 (Apr. 22, 2024) ........................................................................2

91 Fed. Reg. 7686 (Feb. 18, 2026) ....................................2, 10, 11, 15, 16, 23, 25

**Other Authorities**

*Global Energy Review 2025*, INT'L ENERGY AGENCY (2025),
  https://tinyurl.com/2rfx49t8........................................................................17

# GLOSSARY

CAA      Clean Air Act

EPA      Environmental Protection Agency

GHG      greenhouse gas

RFRA     Religious Freedom Restoration Act

# INTRODUCTION

For years, emissions regulations have lurched from one emissions regime to the next, imposing billions in unjustified costs along the way. The Rule at issue here at last ends that churn. It rests on the Environmental Protection Agency's considered judgment that the Clean Air Act does not authorize EPA to set tailpipe standards based on global climate concerns.

Petitioners would have this Court undo that judgment on an emergency basis. They do not identify a concrete injury that the Rule will inflict on any one of them during the brief window of judicial review. Instead, they invoke diffuse and contested harms of global climate change. They then imaginatively recast those "injuries" as violations of religious liberty and due process.

Petitioners ask too much. A court cannot halt a duly promulgated rule on the strength of such attenuated injuries and dubious claims, particularly when a stay would impose immediate and documented costs across the country. The four stay factors exist precisely to keep speculative grievances like Petitioners' from overriding the orderly operation of federal law.

Because Petitioners cannot make *any* of the showings that the extraordinary remedy of a stay requires, the Court should deny Petitioners' motion.

1

## BACKGROUND

The CAA authorizes EPA to regulate emissions from new motor vehicles and engines "which in [the Administrator's] judgment cause, or contribute to, air pollution which may reasonably be anticipated to endanger public health or welfare." 42 U.S.C. § 7521(a)(1).

In 2009, EPA found that six "well-mixed" greenhouse gases emitted from motor vehicles contributed to pollution that in turn endangered public health. 74 Fed. Reg. 66,496 (Dec. 15, 2009). EPA then issued a series of motor-vehicle tailpipe emission standards premised on those findings.[1]

In February 2026, EPA published a rule that rescinded the 2009 Endangerment Finding, as well as all greenhouse-gas mobile emission standards for model years 2012 and beyond, on several grounds. 91 Fed. Reg. 7686 (Feb. 18, 2026). It did so after reviewing hundreds of thousands of comments, including comments from Petitioners here. And it reached a judgment that the Supreme Court expressly said EPA could make. *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 318 (2014).

---

[1] *See* 75 Fed. Reg. 25,324 (May 7, 2010); 76 Fed. Reg. 57,106 (Sept. 15, 2011); 77 Fed. Reg. 62,624 (Oct. 15, 2012); 81 Fed. Reg. 73,478 (Oct. 25, 2016); 85 Fed. Reg. 24,174 (Apr. 30, 2020); 86 Fed. Reg. 74,434 (Dec. 30, 2021); 89 Fed. Reg. 27,842 (Apr. 18, 2024); 89 Fed. Reg. 29,440 (Apr. 22, 2024).

Petitioners insist that EPA had no room to make this judgment. They don't question EPA's reading of the relevant statutes or authorities. Instead, they believe "the government is imposing" "air quality pollution" on them through the Rule, *see* Venner Decl. ¶ 13, Pet'rs' Ex.18, violating their religious and substantive due process rights. Although they recognize that the emissions result from other parties' actions, they fault the Rule for "reflect[ing] a governmental lack of stewardship." S.A. Decl. ¶ 17, Pet'rs' Ex.22. Invoking the Constitution, they say EPA *must* "protect[]" them. Williams Decl. ¶ 9, Pet'rs' Ex.24; *but see, e.g.*, *Collins v. City of Harker Heights*, 503 U.S. 115, 127 (1992) (calling a similar theory "unprecedented"). So they have moved to stay the Rule.

**ARGUMENT**

Petitioners aren't entitled to a stay. To secure one, they must "ma[ke] a strong showing that [they are] likely to succeed on the merits," demonstrate that they "will be irreparably injured absent a stay," prove that a stay won't "substantially injure" other parties, and establish it is in the "public interest." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (cleaned up). They haven't shown any of those things.

3

## I. Petitioners Are Unlikely To Succeed On The Merits.

None of Petitioners' claims are likely to succeed. They raise only a deficient claim under the Religious Freedom Restoration Act (because they only allege an incidental burden on their religion), a deficient substantive due process claim (because they fail to identify an affected fundamental right or an irrational decision), and a deficient procedural argument (because they wrongly assume EPA must grapple with every fine point of every comment made).

### A. The Rule Creates No Substantial Burden Under RFRA.

Petitioners first look to RFRA. RFRA prohibits the federal government from "substantially burden[ing] a person's exercise of religion" unless it "is in furtherance of a compelling governmental interest" and uses the "least restrictive means" to further that interest. 42 U.S.C. § 2000bb-1(a)-(b).

A substantial burden exists only if the government's action "coerce[s]" a person "into violating their religious beliefs" or "penalize[s] religious activity by denying any person an equal share of the rights, benefits, and privileges enjoyed by other citizens." *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 449 (1988). "[I]ncidental effects of government programs, which may make it more difficult to practice certain religions," don't suffice unless

4

they "coerce individuals into acting contrary to their religious beliefs." *Id.* at 450; *see also, e.g.*, *Apache Stronghold v. United States*, 101 F.4th 1036, 1061 (9th Cir. 2024) (finding that RFRA "must be understood as having similarly adopted" *Lyng*'s substantial-burden test). A government action must also "put[] substantial pressure on an adherent," so an "inconsequential or *de minimis* burden on religious practice" isn't enough. *Kaemmerling v. Lappin*, 553 F.3d 669, 678 (D.C. Cir. 2008) (cleaned up). "Substantial" must mean something.

The Rule does not impose a substantial burden on Petitioners' religious practices. Petitioners argue that the Rule will make temperatures too hot for them to engage in certain practices. Mot.9, 12. Even if true (it's not), nothing in the Rule coerces Petitioners to act contrary to their beliefs. The Rule doesn't force anyone to do anything. The temperature would be incidentally affected by third parties' emissions, not by the Rule's removal of certain restraints. At worst, then, EPA's rule may "make it more difficult," in a minimal way, for Petitioners to practice their religion. *Lyng*, 485 U.S. at 450. But showing a substantial burden requires more. The Rule's alleged "incidental interference with" Petitioners' "spiritual activities" has "no tendency to coerce [them] into acting contrary to their religious beliefs." *Id.*

That's why Petitioners can't summon any authority finding a substantial burden from a failure to regulate a broad social problem in a religious practitioner's preferred way. *Cf. C.L. for Urb. Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003) (explaining that "the scarcity of affordable land" did not create a substantial burden under an analogous statute).

*Mahmoud v. Taylor*, 606 U.S. 522 (2025), doesn't change the outcome. There, the Supreme Court held that "[a] government burdens the religious exercise of parents when it requires them to submit their children to instruction that poses a 'very real threat of undermining' the religious beliefs and practices that the parents wish to instill." *Id.* at 530 (cleaned up). Required instruction, the Court said, "implicates direct, coercive interactions between the State and its young residents." *Id.* at 557. *Mahmoud* thus turned on the government policy's coercive effect—*Lyng*'s threshold inquiry. Lacking some coercive act here, Petitioners can find no refuge in *Mahmoud*.

Because the Rule imposes no substantial burden, the Court can end its RFRA inquiry here; Petitioners are unlikely to succeed on this claim.

**B. The Rule Doesn't Implicate Due Process Concerns.**

Next, Petitioners invoke the Due Process Clause. That provision "generally confer[s] no affirmative right to governmental aid, even where such

aid may be necessary to secure life, liberty, or property interests." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989). Applying that principle, Petitioners' due process arguments—all premised on EPA's decision not to regulate—must fail.

### 1. Petitioners Lack A Relevant Substantive Due Process Right.

The Fifth Amendment's "substantive component … forbids the government to infringe [on] certain 'fundamental' liberty interests." *Reno v. Flores*, 507 U.S. 292, 301-02 (1993). "[T]o determine whether due process requirements apply in the first place," courts "look … to the nature of the interest at stake." *Bd. of Regents v. Roth*, 408 U.S. 564, 570-71 (1972). To have a protectible right, a person must have "a legitimate claim of entitlement to it," not a "unilateral expectation" or "abstract need or desire." *Id.* at 577.

Petitioners mistakenly claim to have a fundamental liberty interest in pollution regulation. Federal courts have repeatedly rejected the existence of a constitutional right to a "pollution-free environment." *Nat'l Sea Clammers Ass'n v. City of New York*, 616 F.2d 1222, 1238 (3d Cir. 1980), *vacated on other grounds sub nom. Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1 (1981); *see also Del. Riverkeeper Network v. FERC*, 895 F.3d 102, 108 (D.C. Cir. 2018) (holding that the "right to a healthy environment"

can't "fairly be described as a 'liberty' interest"); *Clean Air Council v. United States*, 362 F. Supp. 3d 237, 250-51 (E.D. Pa. 2019) (collecting cases). In *Clean Air Council*, for instance, the court found no "liberty interest" in a "life-sustaining climate system." 362 F. Supp. 3d at 250. It rejected a state-created-danger argument because that doctrine "exclude[s] those instances where the state actor creates only a threat to the general population"; in contrast, "climate change is the creation of those that pollute the air, not the Government." *Id.* at 252 (cleaned up). Plaintiffs thus failed to state a substantive due process right to "life and personal bodily integrity" harmed by fossil-fuel pollution, as the government's "failure to protect an individual against [alleged] private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 253 (cleaned up).

Like many courts before, this Court should "decline the invitation to elevate to a constitutional level" environmental concerns like those Petitioners raise. *Ely v. Velde*, 451 F.2d 1130, 1139 (4th Cir. 1971). Petitioners lack standing to even bring these claims. *See, e.g.*, *Juliana v. United States*, 947 F.3d 1159, 1164-65 (9th Cir. 2020) (plaintiffs lacked standing to bring similar due-process claims). But even if they had standing, "the right to be free of climate change pollution" is simply not a right the Constitution protects. *SF*

8

*Chapter of A. Philip Randolph Inst. v. EPA*, No. C 07-04936 CRB, 2008 WL 859985, at *7 (N.D. Cal. Mar. 28, 2008) (Breyer, J.).

Petitioners also can't rely on Hawaiian law and a state settlement to support a substantive right "to a life-sustaining climate system."  Mot.19-20 (cleaned up).  State laws can't dictate federal regulatory policy.  So when a different plaintiff invoked similar trust principles to justify a "property right in the environment that is afforded due process protection," that argument failed.  *Del. Riverkeeper Network v. FERC*, 243 F. Supp. 3d 141, 152-53 (D.D.C. 2017) (explaining how state laws might "entitle plaintiffs to sue" in that State, but they do "not create a federal protected property interest").  So too here.  That's especially so because the CAA preempts any state "standard relating to the control of emissions from new motor vehicles or new motor vehicle engines."  42 U.S.C. § 7543(a).  So a state law or settlement agreement can't restrict EPA's regulatory decisions.

## 2. EPA's Decision Was Rational.

Ordinarily in a due-process case challenging an executive act, a challenger also must show the action "is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  *Hurd v. District of Columbia*, 147 F.4th 1036, 1040-41 (D.C. Cir. 2025) (cleaned up).  But if a

petitioner challenges a "legislative act[]," then "rational basis review" applies. *Jones v. Air Line Pilots Ass'n*, 713 F. Supp. 2d 29, 37 & n.7 (D.D.C. 2010) (cleaned up). Legislative acts "generally apply to a larger segment of—if not all of—society; laws and broad-ranging executive regulations are the most common examples." *Littlejohn v. Sch. Bd. of Leon Cnty., Fla.*, 132 F.4th 1232, 1242 (11th Cir. 2025) (cleaned up).

EPA's broad-ranging Rule fits neatly into the legislative-acts category, so rational-basis review applies. Under that standard, a petitioner "must plausibly allege facts showing that no reasonably conceivable state of facts could provide a rational basis for the challenged policy." *Sanchez v. Off. of the State Superintendent of Educ.*, 45 F.4th 388, 396 (D.C. Cir. 2022).

The Rule satisfies the "exceedingly deferential" rational-basis standard. *Free Speech Coal., Inc. v. Paxton*, 606 U.S. 461, 469 (2025). EPA concluded that the CAA "does not authorize [the agency] to prescribe [greenhouse gas] emission standards based on global climate change concerns." 91 Fed. Reg. at 7695. And EPA showed its work. "Air pollution" as used in CAA Section 202(a)(1) "meant pollution that harms public health or welfare through local or regional exposure, rather than gases that are not harmful in that sense but may contribute to global phenomena on a far more attenuated chain of

causation." *Id.* at 7722. Put another way, EPA can regulate only vehicle emissions causing "smog and health and welfare impacts related to inhalation and physical contact," not "gases that may endanger public health or welfare only on a global scale and through an attenuated and indirect causal chain." *Id.* at 7714. EPA determined, then, that the 2009 finding that GHG emissions cause global climate change was not enough to trigger the agency's Section 202(a)(1) authority to regulate motor vehicle emissions. That determination satisfies rational-basis review, despite Petitioners' disagreement.[2]

**C. EPA Wasn't Required to Respond to Petitioners' Comments.**

The CAA requires EPA to respond to significant comments when engaged in rulemaking. 42 U.S.C. § 7607(d)(6)(B). At the same time, "[o]nly an objection to a rule … which was raised with reasonable specificity … may be raised during judicial review." *Id.* § 7607(d)(7)(B).

---

[2] If the "shocks the conscience" standard applies, then the Rule doesn't come close to "the cognizable level of executive abuse of power" required under that test. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). "[S]omething more than negligence" is necessary, *id.* at 849, and the bar is highest when the government is "subject[ed] to the pull of competing obligations," *Lombardi v. Whitman*, 485 F.3d 73, 83 (2d Cir. 2007). So courts presume "that the administration of government programs is based on a rational decisionmaking process that takes account of competing social, political, and economic forces." *Id.* at 84 (cleaned up). Here, EPA considered competing interests and concluded that it lacked statutory authority for its prior finding.

Petitioners' comments were deficient for two key reasons, so EPA didn't need to respond to them.

*First*, "comments must be significant enough to step over a threshold requirement of materiality before any lack of agency response or consideration becomes of concern." *Portland Cement Ass'n v. Ruckelshaus*, 486 F.2d 375, 394 (D.C. Cir. 1973). "[A]ssessing significance is context dependent and requires reading the comment in light of both the rulemaking of which it was part and the statutory ends that the proposed rule is meant to serve." *Oakbrook Land Holdings, LLC v. Comm'r*, 28 F.4th 700, 714 (6th Cir. 2022). And "an agency must respond to comments that … challenge a fundamental premise underlying the proposed agency decision." *Carlson v. Postal Regul. Comm'n*, 938 F.3d 337, 344 (D.C. Cir. 2019) (cleaned up); *see also* 42 U.S.C. § 7607(d)(8) (error only matters if "there is a substantial likelihood that the rule would have been significantly changed if such error[] had not been made").

Petitioners' comments didn't cross the significance threshold. Petitioners say EPA didn't respond to comments about religious freedom and children's health. Mot.22-23. While those issues are serious, they don't challenge a fundamental premise underlying the rule. EPA reasoned that

CAA Section 202(a)(1) "does not authorize [EPA] to prescribe emission standards in response to global climate change concerns." 91 Fed. Reg. at 7686. As "creatures of statute," federal agencies "literally have no power to act except to the extent Congress authorized them"—whether the question implicates religious freedom, children's health, or any other subject. *Marin Audubon Soc'y v. FAA*, 121 F.4th 902, 912 (D.C. Cir. 2024) (cleaned up). So EPA did not need to respond.

*Second*, a commenter must "clearly state[] its position." *CTS Corp. v. EPA*, 759 F.3d 52, 65 (D.C. Cir. 2014) (cleaned up). "[A]dministrative proceedings should not be a game or a forum to engage in unjustified obstructionism." *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 553 (1978). Commenters play that game "by making cryptic and obscure reference to matters that 'ought to be' considered and then, after failing to do more to bring the matter to the agency's attention, seeking to have that agency determination vacated on the ground that the agency failed to consider matters 'forcefully presented.'" *Id.* at 553-54.

Petitioners are playing the forbidden game. Their comment mentions "religious traditions" once in a list of "fundamental constitutional rights" they claim the Rule will violate. Our Children's Trust Comment Ltr. ("OCT

Comment") at 2, Pet'rs' Ex.6.  They mentioned *Mahmoud* once too, but only for the proposition that they don't have to "wait for this unconstitutional act to be completed … to protect their rights."  *Id.*, Pet'rs' Ex.6.  And they made a single passing reference to the "mental health of American children," but didn't elaborate.  *Id.* at 8, Pet'rs' Ex.6.  These "obscure reference[s]" are the exact type of whack-a-mole the Supreme Court warned against.  *Vt. Yankee*, 435 U.S. at 553-54.

EPA responded directly to the general health concerns that Petitioners' comments *did* raise.  Petitioners pointed to non-binding international law, OCT Comment at 4, Pet'rs' Ex.6, cases that didn't survive motions to dismiss, *id.* at 7, Pet'rs' Ex.6 (citing *Lighthiser v. Trump*, No. CV 25-54-BU-DLC, 2025 WL 2930569 (D. Mont. Oct. 15, 2025)), and cases interpreting state constitutions, *id.*, Pet'rs' Ex.6 (citing *Held v. Montana*, No. CDV-2020-307 (Mont. 1st Jud. D. Ct. Aug. 14, 2023)).  EPA in turn applied relevant federal authorities, such as "Executive Order 13045: Protection of Children from Environmental Health Risks and Safety Risks."  EPA Resp. to Comments at 281-282, Pet'rs' Ex.5.  It rebutted commenters' health-related constitutional claims—even addressing Petitioners' cases.  *Id.* at 309-311, Pet'rs' Ex.5.  And it responded to comments "regarding high courts of other nations."  *Id.* at 311,

Pet'rs' Ex.5.  So even if the Court considers Petitioners' comments significant, EPA responded to the few Petitioners raised.

Finally, Petitioners mistakenly argue that EPA did not grapple with significant Supreme Court precedents.  Mot.23-24.  But they don't cite any law requiring agencies to distinguish every case mentioned in public comments; no such requirement exists.  Quite the opposite: a reasoned analysis doesn't "require[] [an agency] to distinguish every precedent cited to it by an aggrieved party."  *LeMoyne-Owen College v. NLRB*, 357 F.3d 55, 60 (D.C. Cir. 2004).  And "an agency changing its course by rescinding a rule is [merely] obligated to supply a reasoned analysis for the change."  *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Auto. Ins. Co.*, 463 U.S. 29, 42 (1983). EPA could do so without grappling with Petitioners' irrelevant authorities on desegregation, *Brown v. Bd. of Educ.*, 347 U.S. 483 (1954), workers' compensation, *Weber v. Aetna Cas. & Sur. Co.*, 406 U.S. 164 (1972), and more. The Rule engaged with *relevant* Supreme Court precedent like *American Electric Power v. Connecticut*, 564 U.S. 410 (2011).  91 Fed. Reg. at 7722; *contra* Mot.24.  That's all EPA needed to do during its environmental rulemaking process.

* * *

15

Lacking any viable claim (let alone one likely to succeed), Petitioners' motion must be denied.

## II. Petitioners Have Not Shown Concrete, Immediate, Irreparable Harm.

A movant for a stay pending review must show harm that is "both certain and great," "actual and not theoretical," and "of such imminence that there is a 'clear and present' need for equitable relief to prevent irreparable harm." *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (cleaned up). Yet Petitioners raise only generalized concerns about climate change—far from any harm to any individual Petitioner that is concrete and certain to occur during this Court's judicial review period. A stay demands more.

The Rule poses no "certain" or "great" harm. Petitioners' principal harm figure—942.2 million metric tons of added carbon-dioxide emissions—is an aggregate, national, fleet-wide estimate accumulating over decades. Mot.25. Overall, the estimated emissions are as EPA described—"de minimis." 91 Fed. Reg. at 7758. Petitioners' experts "estimate the amount of $CO_2$ emissions from the Repeal Rule will increase to 111.2 million tons of carbon dioxide over the next five years." Sperling Decl. ¶ 49, Pet'rs' Ex.12; Wilson Decl. ¶ 15, Pet'rs' Ex.13 (same). That amounts to 22.24 million more metric tons annually. Considering that the world emits approximately 38

*billion* tons of $CO_2$ annually, *Global Energy Review 2025*, INT'L ENERGY AGENCY (2025), https://tinyurl.com/2rfx49t8, the Rule would increase annual global emissions by 0.059% if Petitioners were right. De minimis indeed.

Petitioners' emissions estimate doesn't bridge the gap between the Rule and actual harm to Petitioners, either. They say the Rule will make their neighborhoods hotter. How much? When? Where? Does science support a local temperature increase from an unidentified amount of local emissions? Does science support imminent harm from an unknown local temperature increase? Petitioners don't say. Instead, they make bare generalizations that don't satisfy the irreparable harm standard. *See Sierra Club v. Atl. Reg'l Comm'n*, 171 F. Supp. 2d 1349, 1361 (N.D. Ga. 2001) (finding plaintiffs lacked sufficient "evidence or proof of any immediate threat of a worsening of air quality" to show irreparable harm from highway projects). References to "more heat," Mot.27, are the types of "generalized worries … [that] do not amount to irreparable harm," *KalshiEX LLC v. Commodity Futures Trading Comm'n*, 119 F.4th 58, 67 (D.C. Cir. 2024).

Nor is the alleged harm certain to occur. *Wis. Gas*, 758 F.2d at 674. Harm certain enough to support a stay motion must be more than "something merely feared as liable to occur at some indefinite time." *Id.* (cleaned up). And

"[b]are allegations of what is likely to occur are of no value since the court must decide whether the harm will *in fact* occur." *Id.* The question is not whether the Rule will, over the operating life of a national vehicle fleet, yield more aggregate $CO_2$ than the prior regime; it is whether, during the pendency of review, a specific Petitioner will suffer actual and certain injury that cannot be undone if Petitioners prevail. Petitioners' emissions estimate might speak to the former, but it's silent on the latter.

Petitioners' injuries also depend on a series of contingent, independent events that foreclose any finding that harm will "in fact occur" within the review period. Manufacturers must make higher-emitting vehicles (which the Rule doesn't compel); consumers must purchase higher-emitting vehicles; those vehicles must be operated, and operated where Petitioners live; their incremental emissions must alter conditions in those places; and the resulting change must rise to a cognizable injury to a Petitioner above the baseline that would have been obtained under the prior standards. Each step turns on independent third-party choices and physical processes that unfold over years, not the months of this litigation. Harm contingent on an attenuated chain of many uncertain events is, by definition, neither "certain" nor "imminent." *Wis. Gas*, 758 F.2d at 674. "The tree of possibilities branches out in many

18

directions and not every path, or even the most likely one, leads to" Petitioners' feared results. *Citizens for Resp. & Ethics in Wash. v. Dep't of Educ.*, 538 F. Supp. 2d 24, 30 (D.D.C. 2008) (collecting authorities).

Petitioners' declarations do nothing to narrow the gap between their theory and their evidence. For instance, Petitioners E.S. and J.K. say that "each Sabbath that is made too hot ... to walk safely to synagogue" is a religious harm. Mot.9. But the declarations do not, and cannot, name a Sabbath in the months ahead that will "certainly" be made unsafe by any increased emissions they attribute to the Rule. The same is true of Petitioner M.D.'s Ramadan observance and the developmental risks asserted for Petitioner L.R.F. Petitioners' expert opines that limiting L.R.F.'s pollution exposure matters during early brain development, Pinsky Decl. ¶ 15, Pet'rs' Ex.16, but she does not prove that the marginal increment attributable to this Rule, during the period of review, will cause certain and cognizable harm to L.R.F. distinct from the pollution to which L.R.F. is already exposed. That's an especially tough task given how Petitioners insist that the government is concurrently taking separate actions that affect the climate. *See generally, e.g.*, Van Susteren Decl., Pet'rs' Ex.6 (attacking various executive orders).

Petitioners also misread *National Association of Farmworkers Organizations v. Marshall*, 628 F.2d 604 (D.C. Cir. 1980), to say that children's exposure to air pollution constitutes irreparable harm. Mot.27-28. There, the Court enjoined a Department of Labor waiver that authorized children to work in pesticide-treated agricultural fields. *Farmworkers*, 628 F.2d at 606. The authorizing statute required the Department to show that such employment "would not be deleterious to [10- and 11-year-olds'] health or well-being." *Id.* at 607 (cleaned up). And the agency did not follow the statute's "clear" directive to provide "objective data" showing no adverse health effects would result from children's employment in the fields. *Id.* at 620. Multiple federal agencies identified the applicable pesticides as "high-risk" or "highly toxic." *Id.* at 613. So the waiver flouted statutory safeguards and authorized 10- and 11-year-olds' direct exposure to highly toxic pesticides. *Id.* at 613-14.

This case is not *Farmworkers*. The Rule doesn't authorize anyone's exposure to anything. It withdraws emissions standards applicable to vehicle manufacturers in the *absence* of the substantial evidence seen in *Farmworkers*. Petitioners rely on a multi-link chain of third-party conduct and atmospheric processes that could cause increased temperatures decades later. And *Farmworkers* did not hold that any agency action with a

conceivable downstream effect on children's health causes irreparable harm. The opinion enjoined a rule waiver that authorized children's direct exposure to a known toxin without satisfying statutory criteria. The Rule here does nothing of the sort.

Lastly, Petitioners contend that any deprivation of constitutional rights constitutes irreparable injury. Mot.27. Not so. *See Alpine Sec. Corp. v. Fin. Indus. Regul. Auth.*, 121 F.4th 1314, 1333-34 (D.C. Cir. 2024). But even if it did, Petitioners' argument hinges on their merits theories. Because Petitioners have not shown that the Rule violates the Constitution, *see* Part I, *supra*, this per se harm theory gets them nowhere.

Petitioners have not proven harm that is concrete, certain, imminent, and beyond ordinary post-judgment remediation. Their motion should be denied.

## III. The Balance of Equities and Public Interest Disfavor A Stay.

The third and fourth *Nken* factors—harm to other parties and the public interest—"merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. The merged factors disfavor a stay. A stay will harm the regulated industry (and the broader economy), which has already adjusted its operations, capital allocation, and product planning in reliance on EPA's Rule.

The public interest points the same way, as it upends the orderly administration of federal regulatory programs and the CAA Section 307(d) process Congress built.

**A. A Stay Immediately Harms Regulated Parties And Others.**

A stay would inflict immediate harm on the regulated industry. EPA's stay denial letter documents that "multiple vehicle companies have announced that they are experiencing significant financial hardships from making investments that were, at least in part, due to the regulations that [a] stay would put back in place." EPA Denial Letter at 2, Pet'rs' Ex.2. And since the Rule's publication, manufacturers have spent the months adjusting fleet plans, supplier relationships, capital expenditures, and more to the new regulatory landscape. Sperling Decl. ¶¶ 15-18, Pet'rs' Ex.12 (stating that manufacturers will begin producing model-year 2027 fleets in July or August 2026). Reimposing the prior emissions standards months in—after manufacturers have already committed resources to their model-year 2027 fleets—would produce the regulatory whiplash Petitioners themselves decry. It would force a second round of expensive recalibration on an industry that requires "years of lead time to design and build new model year" vehicles. Mot.25 (citing Sperling Decl. ¶¶ 16–21, Pet'rs' Ex.12). "[S]erious reliance interests" like

these are the kind of equitable considerations that matter in administrative-law cases. *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221-22 (2016) (cleaned up) (recognizing relevance of reliance interests in evaluating agency policy changes).

A stay would also impose downstream costs on consumers, suppliers, dealerships, workers, and the broader economy. EPA's denial letter details these effects and explains that the harm to regulated parties is "well-documented in the record for the final rule and relevant public reporting." EPA Denial Letter at 2, Pet'rs' Ex.2; *see* 91 Fed. Reg. at 7755-56 (cost analysis). The earlier standards that the Rule rescinded had imposed costs on and constrained choices for consumers—the States included. *See, e.g.*, Benjamin Zycher Decl. ¶¶ 13-14, Ex.2a, Doc. 2080588, *Nebraska v. EPA*, No. 24-1129 (D.C. Cir.) (explaining that EPA's heavy-duty vehicle standards force consumers, including States, to purchase EVs costing tens to hundreds of thousands more); *see also* 89 Fed. Reg. at 28,092 (EPA acknowledging that light-duty and medium-duty standards "increase[] … upfront purchase costs"). Reversing course mid-stream would reimpose those costs.

**B. A Stay Would Not Serve The Public Interest.**

The public has an interest in "preserving orderly procedure." *Va. Petrol. Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958). And the public is "entitled to the prompt execution of orders that [an agency] has made final." *Nken*, 556 U.S. at 427. A stay would necessarily upend that execution—pausing an action implemented at the behest of a democratically elected administration.

In the face of that public interest, Petitioners offer three arguments for the public-interest factor. Each fails.

*First*, Petitioners contend that the regulatory-certainty rationale EPA invoked in denying their administrative stay request "cuts the other way" because "[f]or 15 years, there was regulatory certainty based on" the prior regulatory regime. Mot.29. But uncertainty was the only certain thing under the prior regime. EPA published at least eight sets of emissions standards. The agency's Rule ends this constant regulatory evolution.

*Second*, Petitioners contend that *Mirabelli*'s statement that "children's safety is the overriding equity" entitles them to a thumb on the scale in the public-interest analysis. Mot.28-29 (cleaned up). *Mirabelli* involved a specific injunction concerning a school district's gender-identity policy and the

religious-liberty interests of teachers who implemented it. The Supreme Court didn't announce a categorical "children's safety" tiebreaker applicable in every regulatory action with any conceivable effect on minors. Such a rule would override the ordinary *Nken* analysis.

*Third*, Petitioners attack EPA's cost analysis, arguing that EPA "was unlawfully directed to not consider the costs of GHG pollution in regulatory actions." Mot.30 (cleaned up). That contention isn't quite right. A memo says agencies "should not monetize the impacts from [GHG] emissions … because the uncertainties in performing monetized impacts quantifications are too great." Clark Memo at 3, Pet'rs' Ex.8. But here, EPA didn't consider the "social cost of carbon" because it "played no role in the 2009 Endangerment Finding." 91 Fed. Reg. at 7701 (cleaned up). And "using [that] methodology … was not consistent with the best reading of the statute," which focuses "not on the emissions themselves, but on the possible dangers to health or welfare." *Id.* at 7733. The CAA doesn't direct EPA to consider the social cost of carbon when deciding whether emissions endanger public health and welfare. So cost does not favor Petitioners—just like every other factor.

## CONCLUSION

The Court should deny the motion.

25

Respectfully submitted,

RUSSELL COLEMAN
ATTORNEY GENERAL

 /s/ Matthew F. Kuhn
Matthew F. Kuhn
   *Solicitor General*
Office of the Kentucky
Attorney General
700 Capital Avenue
Suite 118
Frankfort, KY 40601
(502) 696-5300
Matt.Kuhn@ky.gov

*Counsel for Commonwealth of Kentucky*

JOHN B. MCCUSKEY
ATTORNEY GENERAL

 /s/ Michael R. Williams
Michael R. Williams
   *Solicitor General*
Caleb B. David
   *Deputy Solicitor General*
Mattie F. Shuler
   *Assistant Solicitor General*
West Virginia Attorney
General's Office
1900 Kanawha Blvd. E
Bldg. 1 Rm. 26E
Charleston, WV 25305
(304) 558-2021
Michael.R.Williams@wvago.gov
Caleb.B.David@wvago.gov
Mattie.F.Shuler@wvago.gov

*Counsel for State of West Virginia*

STEVE MARSHALL
ATTORNEY GENERAL OF ALABAMA

/s/ A. Barrett Bowdre
A. Barrett Bowdre
  *Solicitor General*

State of Alabama
Office of the Attorney General
501 Washington Avenue
Montgomery, AL 36130
(334) 242-7300
Barrett.Bowdre@AlabamaAG.gov

*Counsel for State of Alabama*

CORI MILLS
ACTING ATTORNEY GENERAL
OF ALASKA

/s/ Jenna M. Lorence
Jenna M. Lorence
  *Solicitor General*

State of Alaska
Department of Law
1031 West Fourth Avenue, Suite 200
Anchorage, AK 99501
(907) 269-5100
jenna.lorence@alaska.gov

*Counsel for State of Alaska*

TIM GRIFFIN
ATTORNEY GENERAL OF ARKANSAS

/s/ Noah P. Watson
Noah P. Watson
  *Deputy Solicitor General*

Office of the Arkansas Attorney
General
101 West Capitol Avenue
Little Rock, Arkansas 72201
(501) 682-2700
noah.watson@arkansasag.gov

*Counsel for State of Arkansas*

JAMES UTHMEIER
ATTORNEY GENERAL OF FLORIDA

/s/ David Dewhirst
David Dewhirst
  *Solicitor General*

State of Florida
Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL 32399-1050
(850) 414-3300
david.dewhirst@myfloridalegal.com

*Counsel for State of Florida*

CHRISTOPHER M. CARR
ATTORNEY GENERAL OF GEORGIA

/s/ John Henry Thompson
John Henry Thompson
  *Solicitor General*

Georgia Department of Law
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3373
jhthompson@law.ga.gov

*Counsel for State of Georgia*


THEODORE E. ROKITA
ATTORNEY GENERAL OF INDIANA

/s/ James A. Barta
James A. Barta
  *Solicitor General*

Office of the Indiana Attorney
General
IGC South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204
(317) 232-0709
James.Barta@atg.in.gov

*Counsel for State of Indiana*


RAÚL R. LABRADOR
ATTORNEY GENERAL OF IDAHO

/s/ Michael A. Zarian
Michael A. Zarian
  *Solicitor General*

Office of the Idaho Attorney
General
700 W. Jefferson St., Suite 210,
Boise, Idaho 83720
(208) 334-2400
michael.zarian@ag.idaho.gov

*Counsel for State of Idaho*


BRENNA BIRD
ATTORNEY GENERAL OF IOWA

/s/ Eric H. Wessan
Eric H. Wessan
  *Solicitor General*

1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 823-9117
(515) 281-4209 (fax)
eric.wessan@ag.iowa.gov

*Counsel for State of Iowa*

28

KRIS W. KOBACH
ATTORNEY GENERAL OF KANSAS

/s/ Dwight R. Carswell
Dwight R. Carswell
  *Deputy Solicitor General*

Office of the Kansas
Attorney General
120 SW 10th Ave., 2nd Floor
Topeka, KS 66612
(785) 268-8410
dwight.carswell@ag.ks.gov

*Counsel for State of Kansas*

LIZ MURRILL
ATTORNEY GENERAL OF LOUISIANA

/s/ J. Benjamin Aguiñaga
J. Benjamin Aguiñaga
  *Solicitor General*

Louisiana Department of Justice
1885 N. Third Street
Baton Rouge, LA 70804
(225) 326-6766
AguinagaB@ag.louisiana.gov

*Counsel for State of Louisiana*

CATHERINE HANAWAY
ATTORNEY GENERAL OF MISSOURI

/s/ Louis J. Capozzi III
Louis J. Capozzi III, #77756 (MO)
  *Solicitor General*
William James Seidleck, #77794
(MO)
  *Principal Deputy Solicitor
  General*

Office of the Attorney General
Old Post Office Building
815 Olive Street, Suite 200
St. Louis, MO 63101
(573) 645-9662
Louis.Capozzi@ago.mo.gov
William.Seidleck@ago.mo.gov

*Counsel for State of Missouri*

LYNN FITCH
ATTORNEY GENERAL OF MISSISSIPPI

/s/ Justin L. Matheny
Justin L. Matheny
  *Deputy Solicitor General*

Mississippi Attorney General's Office
P.O. Box 220
Jackson, MS 39205-0220
(601) 359-3680
justin.matheny@ago.ms.gov

*Counsel for State of Mississippi*

AUSTIN KNUDSEN
ATTORNEY GENERAL OF MONTANA

/s/ Christian B. Corrigan
Christian B. Corrigan
  *Solicitor General*

Montana Department
Of Justice
215 N Sanders
Helena, MT 59602
(406) 444-2026
christian.corrigan@mt.gov

*Counsel for State of Montana*


DREW H. WRIGLEY
ATTORNEY GENERAL OF
NORTH DAKOTA

/s/ Philip Axt
Philip Axt
  *Solicitor General*

North Dakota Attorney General's
Office
600 E. Boulevard Ave., Dept. 125
Bismarck, ND 58505
(701) 328-2210
pjaxt@nd.gov

*Counsel for State of North Dakota*

MICHAEL T. HILGERS
ATTORNEY GENERAL OF NEBRASKA

/s/ Zachary B. Pohlman
Zachary B. Pohlman
  *Deputy Solicitor General*

Nebraska Department of Justice
2115 State Capitol
Lincoln, Nebraska 68509
(402) 471-2683
(402) 471-3297 (fax)
zachary.pohlman@nebraska.gov

*Counsel for State of Nebraska*


D. ANDREW WILSON
ATTORNEY GENERAL OF OHIO

/s/ Mathura J. Sridharan
Mathura J. Sridharan
  *Solicitor General*
John F. Kerkhoff
  *Deputy Solicitor General*

30 East Broad Street, 17th Floor
Columbus, Ohio 43215
(614) 466-8980
Mathura.Sridharan@OhioAGO.gov

*Counsel for State of Ohio*

GENTNER F. DRUMMOND
ATTORNEY GENERAL OF
OKLAHOMA

/s/ Garry M. Gaskins II
Garry M. Gaskins II
 *Solicitor General*

Oklahoma Office of the Attorney
General
313 NE Twenty-First St.
Oklahoma City, OK 73105
(405) 521-3921
Garry.Gaskins@oag.ok.gov

*Counsel for State of Oklahoma*


MARTY J. JACKLEY
ATTORNEY GENERAL OF SOUTH
DAKOTA

/s/ Emily Greco
Emily Greco
 *Assistant Attorney General*

South Dakota Office of the
Attorney
General
1302 East SD Highway 1889, Suite 1
Pierre, SD 57501-8501
(605) 773-3215
emily.greco@state.sd.us

*Counsel for State of South Dakota*

ALAN WILSON
ATTORNEY GENERAL OF SOUTH
CAROLINA

/s/ J. Emory Smith, Jr.
J. Emory Smith, Jr.
 *General Counsel*

Office of the Attorney General
PO Box 11549
Columbia, South Carolina 29211
(803) 734-3642
(803) 734-3677 (fax)
esmith@scag.gov

*Counsel for State of South Carolina*


JONATHAN SKRMETTI
ATTORNEY GENERAL AND REPORTER
OF TENNESSEE

/s/ Madeline Clark
Madeline Clark
 *Solicitor General*

Office of the Tennessee Attorney
General
P.O. Box 20207
Nashville, Tennessee 37202
(615) 532-6026
madeline.clark@ag.tn.gov

*Counsel for State of Tennessee*

KEN PAXTON
ATTORNEY GENERAL OF TEXAS

Brent Webster
  *First Assistant Attorney General*
Ralph Molina
  *Deputy First Assistant Attorney General*
Austin Kinghorn
  *Deputy Attorney General for Civil Litigation*
Kellie Billings-Ray
  *Chief, Environmental Protection Division*

/s/ Wesley S. Williams
Wesley S. Williams
  *Assistant Attorney General*
Texas Bar No. 24108009

Office of the Attorney General
Environmental Protection Division
P.O. Box 12548 (MC-066)
Austin, Texas 78711-2548
(512) 463-2012
(512) 320-0911 (fax)
Wesley.Williams@oag.texas.gov

*Counsel for State of Texas*

DEREK BROWN
ATTORNEY GENERAL OF UTAH

/s/ Stanford Purser
Stanford Purser
  *Solicitor General*

Office of the Utah Attorney General
160 E. 300 S., 5th floor
Salt Lake City, Utah 84111
801-366-0533
spurser@agutah.gov

*Counsel for State of Utah*

32

KEITH G. KAUTZ
ATTORNEY GENERAL OF WYOMING

/s/ D. David DeWald
D. David DeWald
  *Deputy Attorney General*

Office of the Attorney General of
Wyoming
109 State Capitol
Cheyenne, WY 82002
(307) 777-7895
david.dewald@wyo.gov

*Counsel for State of Wyoming*

Dated: June 29, 2026

# CERTIFICATE OF COMPLIANCE

1.      This motion response complies with Fed. R. App. P. 27 because it contains 5,200 words.

2.      This motion response complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), as required by Fed. R. App. 27(d)(1)(E), because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point CenturyExpd BT font.

/s/ Michael R. Williams
Michael R. Williams